IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SILAS JOSEPH ADAMS, GG-7399, )
    Petitioner, )
     )
    v. ) 2:14-cv-1470
     )
SUPT. MARK CAPPOZA, )
    Respondent. )

MEMORANDUM and ORDER

Mitchell, M.J.:

    Silas Joseph Adams, an inmate at the State Correctional Institution at Pittsburgh has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Adams is present serving a life plus a combined consecutive 12 ½ to 25 year sentence imposed following his conviction of first degree murder, criminal attempt-homicide, aggravated assault- serious bodily injury, aggravated assault-serious bodily injury, burglary, recklessly endangering another person and person not to possess firearms at Nos. CC200401066 and CC200400739 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on July 20, 2003.

    An appeal was taken to the Superior Court in which the issues presented were:

    I.    Was the verdict against the weight of the evidence insofar as the testimony offered by the Commonwealth to support a finding that Silas Adams fired the shot that killed Ivan Pegues or acted as an accomplice, and shot at a police vehicle, was unreliable and uncorroborated by the physical evidence, such that the finding of guilt was based on mere surmise and conjecture?

    II.    Did the trial court err in denying the motion for a mistrial after Commonwealth witness Yvonne Luckey testified that the defendant, Silas Adams, sold crack cocaine, insofar as this evidence was not relevant for any reason and it was highly prejudicial insofar as it blackened Mr. Adams' character, stripped him of the presumption of innocence and predisposed the jury to find him guilty.[1]

---

[1] See: Answer at App.68.

1

On October 16, 2008, the judgment of sentence was affirmed.[2] Allowance of appeal was denied by the Pennsylvania Supreme Court on May 28, 2009.[3]

On June 11, 2008, Adams filed a post-conviction petition. The petition was dismissed on July 27, 2012 and a notice of appeal was filed on July 31, 2012. In his appeal, Adams raised the following issues:

> I. Whether trial counsel was ineffective for failing to object to the prosecutor's improper closing arguments in which he unfairly expressed his personal opinions, vouched for his eyewitnesses referred to matters outside the record and appealed to the jury's passions and whether cumulative trial ineffectiveness requires a new trial.
>
> II. Whether trial and appellate counsel were ineffective in failing to raise and preserve challenges to the excessiveness and legality of the additional lengthy sentences which were imposed consecutive to the life sentence.
>
> III. Whether trial counsel was ineffective in failing to object to an improper and insufficient jury instruction which failed to require careful and cautionary scrutiny for cooperative witnesses and whether cumulative trial ineffectiveness requires a new trial.
>
> IV. Whether prior counsel were ineffective for abandoning and failing to pursue a meritorious claim for severance of the homicide from the non-homicide charges and whether cumulative trial ineffectiveness requires a new trial.[4]

On May 31, 2013, the denial of post-conviction relief was affirmed.[5] Allowance of appeal to the Pennsylvania Supreme Court was denied on October 31, 2013.[6]

In the instant petition executed on October 27, 2014 and received in this Court on October 29, 2014, Adams contends he is entitled to relief on the following grounds:

> 1. The Commonwealth failed to introduce evidence that any of the shell casings and bullet fragments which were recovered from the scene of the Ivan Pagues shooting were fired from the weapon that was recovered from the apartment in which appellant was arrested. The Commonwealth failed to prove beyond a reasonable doubt that appellant shot the gun that killed the victim in the instant case, or that appellant acted as an accomplice with those who actually did the killing. Commonwealths star witness Yvonne Luckey testified that she

---

[2] Id. at App.138-149.
[3] Id at App.190.
[4] Id. at App.299.
[5] Id. at App.379-399.
[6] Id. at App.401.

was under the influence of crack cocaine at the time she observed the shooting and that she is near-sighted and wears prescription glasses, but that she was not wearing her glasses on the night of the incident. She only saw the back of the person that was shooting and not their face. During cross-examination she testified that she never told the police that she saw appellant shooting anything and that she did not know who did the shooting or who might have killed Mr. Pagues.

2. In spite of the fact that the trial court had specifically instructed the prosecutor that its star witness Yvonne Luckey was not to testify "where or how" she came in contact with appellant so as to avoid any reference to her claim that she knew him from the fact that he sold crack cocaine a fact which the court and parties agreed was both inadmissible and prejudicial. The witness nevertheless ignored these instructions and volunteered during her testimony that appellant "sold crack off and on" insofar as this evidence was not relevant for any reason and it was highly prejudicial insofar as it blackened appellant's character, stripped him of the presumption of innocence and predisposed the jury to find him guilty.

Thus, it would appear that Adams is seeking to challenge his conviction on the grounds of the insufficiency of the evidence presented to sustain his conviction, and the trial court error in denying a mistrial after Luckey testified regarding the petitioner's prior drug trafficking.

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996). Since it appears that the issues which petitioner seeks to raise here, were substantially raised as his issues on direct appeal he has met the exhaustion requirement.

The background to this prosecution is set forth in the October 16, 2006 Memorandum of the Superior Court adopted from the opinion of the trial court:

3

On December 27, 2003, the victim, Ivan Pegues (hereinafter referred to as "Pegues") drove his red Pontiac Grand Am to 7372 Hamilton Street, which is the residence of Yvonne Luckey (hereinafter referred to as "Luckey"). This residence was known in the neighborhood to be a crack house where individuals who wanted to smoke crack cocaine could go to either purchase or to smoke crack cocaine or both. Luckey was an acknowledged crack cocaine user who smoked that substance on a daily basis Pegues parked his car on Hamilton Street, went into the residence and was seated in the living room with [appellant], having an animated, if not heated discussion. Luckey observed both of these individuals and also noticed that [appellant] possessed an SKS assault rifle. Luckey had a brief conversation with [Monifa] Patterson, (hereinafter referred to as "Patterson"), a friend of hers and also another crack cocaine user. Patterson told Luckey that she observed two black males who were across the street, acting in a suspicious manner. Luckey received more crack cocaine and went back upstairs to her bedroom on the second floor.

Shortly before midnight, Pegues left Luckey's residence, got in his car and was driving down Hamilton Street and was about to make a left-hand turn onto Collier Street when three individuals opened fire on his car and shot at it and him more than forty times. Patterson, who left Luckey's house almost immediately after Pegues, was walking down the street when she saw [appellant] off to her left with the assault rifle and then heard four shots. She went to the ground, got beneath a car and did not look up until all the shooting had ceased. Luckey, who remained in her residence, after hearing the first shot, went to the window and observed [appellant] running down the street firing his assault weapon.

Detectives [Robert} Kavals and [Phillip] Mercurio, (hereinafter referred to as "Kavals" and "Mercurio"), of the Pittsburgh Police Department, were on routine patrol of North Dunfermine Street when they heard thirty to forty gunshots. They proceeded to the intersection of Hamilton and Collier Street[s] and found the red Grand Am that had been bullet-ridden. Kavals looked into the car expecting to find a victim only to discover that the Pontiac Grand Am had been abandoned along with a forty caliber semi-automatic weapon. Kavals then tried to locate the driver of the Pontiac Grand Am, but he could not. Pegues' body was found in a yard several hundreds of feet from the shooting. His partner, Mercurio, began to run toward Formosa Way in an effort to locate the shooters. Several moments later a couple of more shots were fired and Mercurio radioed Kavals that three black males were running toward Braddock Avenue. Kavals got back in his car and was in constant radio communication with his partner. He proceeded down Hamilton onto North Braddock and as he was approaching Kelly Street he saw his partner, who told him that the three individuals had split up. Kavals then proceeded down Kelly Street when he observed [appellant] walk from between two houses and fire two shots. Kavals radioed to his base radio operator that he was being fired upon by [appellant].

> [Appellant] continued to run between homes and streets until he reached an apartment building on Bennett Street and went to the third floor and broke into an apartment occupied by two teenage girls and three small children. [Appellant] was seen by other Pittsburgh police officers that participated in this chase take the assault rifle and attempt to hide it on the outside porch. When the officers went into the apartment, [appellant] was standing behind one teenage girl and went onto the floor when he as directed to do so. He was subsequently handcuffed and then placed under arrest (footnote omitted).[7]

The first issue which Adams appears to raise is a challenge to the sufficiency of the evidence to sustain his conviction. A federal court reviewing that contention must look to determine whether based on the evidence presented any rational factfinder could determine guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

In the instant case, petitioner was convicted of first degree murder[8], criminal attempt[9], 2 counts of aggravated assault[10], burglary[11], former convict not to own… a firearm[12], 2 counts of recklessly endangering another person[13] and criminal trespass – breaking into a structure[14].

---

[7] Id. at App.138-140.
[8] 18 Pa.C.S.A. §2502 §§A provides: "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing."
[9] 18 Pa.C.S.A. §901§§A provides: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."
[10] 18 Pa.C.S.A. §2702 §§A1 and A2 provide "a person is guilty of aggravated assault if he: (a)(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; (a)(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) [police officer] …"
[11] 18 Pa.C.S.A. § 3502 §A provides: " A person commits the offense of burglary if, with the intent to commit a crime therein, the person; (1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present…"
[12] 18 Pa.C.S.A. § 6105 provides in part: "A person who has been convicted of an offense … shall not possess, use, control, sell, transfer or manufacture … a firearm in this Commonwealth." By agreement of the parties in order not to introduce Adams' prior record to the jury it was only asked whether Adams possessed a firearm whereupon it was agreed that the court would enter a verdict on the charges of possession by a convicted individual (TT.4/11/2005 pp.20-22). After

5

As a matter of Pennsylvania evidentiary law, claims of insufficient evidence are not properly before this Court, Swarthout v. Cooke, 131 S.Ct. 859 (2011), unless based on the evidence presented no rational juror could find guilty beyond a reasonable doubt. Jackson v. Virginia, supra. From the factual recitation set forth above, it is apparent that the evidence presented, if believed, would support a conviction on the various counts. For this reason, Adam's first claim is meritless.

Adam's next argues that despite a prohibition, Luckey testified about petitioner's involvement in drug trafficking and as such a mistrial should have been granted. (TT. 4/22/2005 p.51). Following this improper testimony, and a motion for a mistrial, the court immediately instructed the jury:

> Ladies and gentlemen, I'm ordering the last response of the witness to be stricken from the record and you are to disregard it. It's not something you may consider as evidence.

(TT. 4/22/2005 p.55). In the context of the trial as whole, and with the instruction to disregard her testimony, the trial was not impermissibly tainted. (App. 59). See: United States v. Franz, 772 F.3d 134 (3d Cir. 2014). Accordingly, this claim likewise does not provide a basis for relief.

Because there is no showing that Adams' conviction was secured in any manner contrary to the law of the United States as determined by the Supreme Court, nor involved an unreasonable application of that law, the petition of Silas Joseph Adams for a writ of habeas corpus will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

---

the jury's verdict, the court entered a guilty verdict on this count on May 3, 2005 but no additional sentence was imposed.

[13] 18 Pa.C.S.A. §2705 provides: "a person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may another person in danger of death or serious bodily injury."

[14] 18 Pa.C.S.A. §3503 §§A(ii) provides: " A person commits an offense [criminal trespass] if, knowing that he is not licensed or privileged to do so he breaks into any building or occupied structure or separately secured or occupied portion thereof."

ORDER

AND NOW, this 19th day of March, 2015, for the reasons set forth in the foregoing Memorandum, the petition of Silas Joseph Adams for a writ of habeas corpus (ECF 4) is DISMISSED and a certificate of appealability is DENIED.

The parties are advised that pursuant to Rule 4(a) F.R.App.P any party desiring to file an appeal must do so within thirty (30) days of this date by mailing a notice of appeal to the Clerk, United States District Court, 700 Grant Street, Pittsburgh, PA 15219-1957.

s/ Robert C. Mitchell
United States Magistrate Judge